UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA CLARK, BROOKSEY IRVINE,
REGINALD MORRISSETTE, MELBA
PEARSON, and EZELL WILLIAMS,
on behalf of themselves and others
similarly situated,

        Plaintiffs,

                                 Case No. 2:15-cv-13243-SFC-MKM
vs.                              HON. SEAN F. COX

ROYAL TRANSPORTATION COMPANY,
DONALD FITZSIMMONS, DEBRA
FITZSIMMONS, and SHANNON
FITZSIMMONS

        Defendants.

_____/

| | |
|---|---|
| GOLD STAR LAW, P.C. | THE DANIELSON GROUP, P.C. |
| MAIA E. JOHNSON (P40533) | KENNETH M. GONKO (P30660) |
| DAVID A. HARDESTY (P38609) | Attorneys for Defendants |
| Attorneys for Plaintiffs | 55921 Gratiot Avenue |
| 2701 Troy Center Dr., Ste. 400 | Chesterfield, MI 48051 |
| Troy, MI 48084 | (586) 749-6400 |
| (248) 275-5200 | kgonko@dgrouppc.com |
| mjohnson@goldstarlaw.com | |

_____/

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT UNDER FEDERAL RULE OF CIVIL PROCEDURE 56(C)

NOW COMES Defendants, Royal Transportation Company, Donald

Fitzsimmons, Debra Fitzsimmons and Shannon Fitzsimmons, by and through their

attorneys, The Danielson Group, P.C., and move this Court for an Order Granting

Defendants' Motion for Partial Summary Judgment and Dismissing Plaintffs'
Amended Complaint.  In support of this Motion, Defendants rely on the attached
Brief in Support, attached Exhibits, and the pleading on file with the Court.
Concurrence for the relief sought was made on April 21, 2017 and has not been
granted.

<div style="margin-left:40%">

Respectfully submitted,

THE DANIELSON GROUP. P.C.


By: s/Kenneth M. Gonko
   Kenneth M. Gonko (P30660)
Counsel for Defendants
55921 Gratiot Avenue
Chesterfield, MI 48051
(586) 749-6400
kgonko@dgrouppc.com

</div>

Dated: April 21, 2017

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA CLARK, BROOKSEY IRVINE,
REGINALD MORRISSETTE, MELBA
PEARSON, and EZELL WILLIAMS,
on behalf of themselves and others
similarly situated,

       Plaintiffs,

                                Case No. 2:15-cv-13243-SFC-MKM
vs.                             HON. SEAN F. COX

ROYAL TRANSPORTATION COMPANY,
DONALD FITZSIMMONS, DEBRA
FITZSIMMONS, and SHANNON
FITZSIMMONS

       Defendants.

                                    /

| GOLD STAR LAW, P.C. | THE DANIELSON GROUP, P.C. |
|---|---|
| MAIA E. JOHNSON (P40533) | KENNETH M. GONKO (P30660) |
| DAVID A. HARDESTY (P38609) | Attorneys for Defendants |
| Attorneys for Plaintiffs | 55921 Gratiot Avenue |
| 2701 Troy Center Dr., Ste. 400 | Chesterfield, MI 48051 |
| Troy, MI 48084 | (586) 749-6400 |
| (248) 275-5200 | kgonko@dgrouppc.com |
| mjohnson@goldstarlaw.com | |

                                    /

## DEFENDANTS' BRIEF IN SUPPORT OF
## ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES.................................................................. iii.

STATEMENT OF THE ISSUE PRESENTED..................................... 1

INTRODUCTION.................................................................................. 1

STATEMENT OF FACTS..................................................................... 1

ARGUMENT.......................................................................................... 2

    A.  SUMMARY JUDGMENT STANDARD............................... 2

    B.  THE FLSA AND THE MOTOR CARRIER
        ....EXEMPTION.................................................................. 4

    C.  ROYAL IS A MOTOR CARRIER SUBJECT TO DOT/
        FMCSA JURISDICTION.................................................. 11

    D.  THE DEPARTMENT OF TRANSPORTATION AND
        THE FMCSA HAS EXERCISED JURISDICTION
        OVER ROYAL'S PASSENGER SERVICE
        OPERATION........................................................................ 12

    E.  ROYAL'S DRIVERS MUST MEET DOT/FMCSA
        LICENSING REQUIREMENTS...................................... 15

    F.  ROYAL DRIVERS MAINTAIN DOT REQUIRED
        DRIVERS DAILY LOGS AND CONDUCT BOTH
        PRE- AND POST-TRIP INSPECTIONS REQUIRED
        BY THE FMCSA................................................................ 16

G.  ROYAL MAINTAINS AN OUT-OF-STATE CHARTER
     PASSENGER AND AIRPORT TRAVEL SERVICE
     THUS MAKING IT ENGAGED IN INTERSTATE
     TRAVEL...................................................................... 18

H.  ROYAL'S DRIVERS HAVE A REASONABLE
     EXPECTATION OF ENGAGING IN INTERSTATE
     OR AIRPORT ASSIGNMENTS...................................... 21

CONCLUSION....................................................................... 24

# INDEX OF AUTHORITIES

**Case Law**                                                                 **Page**

**Most Appropriate Authority**

*Abel v. Southern Shuttle Services, Inc.,*
631 F.3d 1210 (11th Cir. 2011).................................................. 21

*Garcia v. Pace Suburban Bus Svc.,* 955 F. Supp 75 (N.D. Ill. 1996)... 15,18-19, 21

*Levinson v. Spector Motor Svc.,* 330 U.S. 649 (1947)........................... 4, 6, 13

*Morris v. Macomb,* 332 U.S. 422, 434 (1947)...................................... 5, 7

*Resch v. Krapf's Coaches, Inc.,* 785 F.3d 869 (3rd Cir. 2015)............... 8, 15

**Other Authority**

*Ale v. Tennessee Valley Auth.,* 269 F.3d 680, 691 (6th Cir. 2001).......... 3

*Allen v. Coil Tubing Serv., LLC,* 755 F.3d 279 (5th Cir. 2014).............. 6

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).......................... 3

*Benson v. Universal Ambulance Svc.,* 675 F.2d 783 (6th Cir. 1982)..... 21

*Brennan v. Schwerman Trucking Company of Virginia,*
540 F.2d 1200 (4th Cir. 1976).................................................. 20

*Celotex Corp., v. Catrett,* 477 U.S. 317 (1986)...................................... 2

*Freeman v. National Broadcasting Co.,* 846 F.Supp. 1109
(S.D.N.Y. 1993), rev'd on other grounds, 80 F.3d 78
(2nd Cir. 1996) ........................................................................... 6

*Friedrich v. U.S. Computer Services*, 974 F.2d 409 (3rd Cir. 1992)..... 3, 6

*Hopkins v. Electronic Data Sys. Corp.*, 196 F.3d 655 (6th Cir. 1999)... 2

*Icicle Seafoods, Inc. V. Worthington*, 475 U.S. 709 (1986)................... 3

*Johnson Hix Wreck Service, Inc.*, 651 F.3d 658 (7th Cir. 2011)............ 22

*Marshall v. Aksland*, 631 F.2d 600 (9th Cir. 1980)................................. 20

*McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167 (3rd Cir. 2015)...... 4

*Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246 (3rd Cir. 2005)........ 6

*Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947).............. 6

*Reich v. Am. Driver Svc.*, 33 F.3d 1154 (9th Cir. 1994)......................... 7

*Spires v. Ben Hill County*, 980 F.2d 683 (11th Cir. 1993)..................... 4

*Starrett v. Bruce*, 391 F.2d 320 (10th Cir. 1968).................................... 13

*Tennessee Valley Auth.*, 269 F.3d 680, 691 (6th Cir. 2001).................. 3

*Thompson v. Ashe*, 250 F.3d 399 (6th Cir. 2001).................................... 3

*Walsh v. United Parcel Serv.*, 201 F.3d 718(6th Cir. 2000)................... 2

*Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221
(11th Cir. 2009)........................................................................................ 6

**Statutes and Regulations**

29 U.S.C. §207(a)(1)................................................................................. 4

29 U.S.C. §213(b)(1)................................................................................. 4

49 U.S.C. §13012....................................................................... 5

49 U.S.C. §13102(14)............................................................... 5, 11

49 U.S.C. §§ 13501(1)(A),31502(a)(1)..................................... 5

49 U.S.C. §31502(b)(1)............................................................. 5

29 C.F.R. §782.2(a)............................................................... 5, 6, 12

29 C.F.R. §782.7....................................................................... 6

49 CFR, subtitle B, Chapter III, Subchapter B, Rule 395.5................ 16

49 CFR, subtitle B, Chapter III, Subchapter B, Rule 395.11,13......... 17

## **STATEMENT OF THE ISSUE PRESENTED**

Are the Defendants entitled to Summary Judgment dismissing Plaintiffs'
claims for overtime compensation under the Fair Labor Standards Act where the
Plaintiffs are exempt from overtime pursuant to the Motor Carrier Exemption
contained in Section 213(b) of the Act?

Plaintiffs Answer:          No.

Defendants Answer:          Yes.

## **INTRODUCTION**

Plaintiffs filed this action on behalf of themselves and others who are
arguably similarly situated against the Defendants under 29 U.S.C. §207.  They
allege that the Defendants collectively failed to properly pay them overtime
compensation under the Fair Labor Standards Act.  The Defendants deny that they
are liable to the Plaintiffs and other similarly situated class members for any
overtime under the FLSA and rely upon the Motor Carrier Act exemption codified
under §213(b)(1) of the FLSA.

## **STATEMENT OF FACTS**

Defendants have prepared and filed a Statement of Material Facts Not in
Dispute together with numerous exhibits in support of their Motion for Partial
Summary Judgment  pursuant to the Court's Motion Practice and Briefing

guidelines. This Statement of Material Facts Not in Dispute, together with the exhibits, is referenced and incorporated herein for all purposes.

## ARGUMENT

### A. Summary Judgment Standard.

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The movant must meet the initial burden of demonstrating the absence of a genuine issue of material fact, either through the identification of a pertinent portion of the record or by demonstrating that the non-moving party lacks evidence to support an essential element of its case. *Celotex Corp., v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the initial burden is met, the non-movant must demonstrate by affidavits, depositions, answers to interrogatories, and admissions that a genuine issue of material fact exists. *Walsh v. United Parcel Serv.*, 201 F.3d 718, 724 (6th Cir. 2000). A mere scintilla of evidence in support of the non-movant's position does not create a genuine issue of material fact. *Hopkins v. Electronic Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999). If the nonmoving party fails to make a

-2-

sufficient showing on an essential element of the case to which the nonmovant has the burden, the moving party is entitled to summary judgment as a matter of law. *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001).

In an FLSA action, the employer bears the burden of proving that its employees come within the scope of an exemption from the FLSA's overtime requirements. *Friedrich v. U.S. Computer Services*, 974 F.2d 409, 412 (3rd Cir. 1992). Once the employer proves that it is exempt from the FLSA's overtime requirements, the burden shifts to the employees to demonstrate disputes of material fact. *Id.*, citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The question of whether an employee's particular activities exclude him from the overtime provisions of the FLSA is a question of law for the court to decide. *Icicle Seafoods, Inc. V. Worthington*, 475 U.S. 709, 714 (1986); *Ale v. Tennessee Valley Auth.*, 269 F.3d 680, 691 (6th Cir. 2001).

Here, summary judgment in favor of Royal is appropriate because there are no material facts in dispute and the Motor Carrier Act ("MCA") exemption applies to all of Royal's drivers. As a matter of law, Royal is entitled to summary judgment.

-3-

## B. The FLSA and the Motor Carrier Exemption.

The FLSA requires that covered employers like Royal pay employees "engaged in commerce" at a rate of time and one-half of the employees' customary rate of pay for all work performed in excess of forty hours in a single workweek. 29 U.S.C. §207(a)(1).  However, the FLSA overtime provision does not apply to "any employee with respect to whom the Secretary of Transportation ("DOT") has the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935 [49 U.S.C.S. §31502]." 29 U.S.C. §213(b)(1). Therefore, the MCA exemption prevents the Secretary of Labor and the Secretary of Transportation from *both* having jurisdiction over motor carriers with regard to maximum hours.  In *Levinson v. Spector Motor Svc.*, 330 U.S. 649, 661-662 (1947), the Supreme Court noted that Congress could have allowed overlapping jurisdiction but declined to do so. Accordingly, courts must give this separation of authority its intended effect.  See also *Spires v. Ben Hill County*, 980 F.2d 683 (11th Cir. 1993) (Congress created the MCA to eliminate any conflict between the Department of Labor over the FLSA and the mutually exclusive jurisdiction exercised by the Department of Transportation over the MCA.); *McMaster v. E. Armored Servs., Inc.,* 780 F.3d 167, 171 (3rd Cir. 2015).

-4-

The Motor Carrier Act permits the Secretary of Transportation to regulate "transportation by motor carrier... to the extent that passengers, property or both... are transported by motor carrier between a place in a State and a place in another State." 49 U.S.C. §§31502(a)(1), 13501(1)(A). The Secretary of Transportation's authority to regulate such transportation includes the power to "prescribe requirements for... qualifications and maximum hours of service of employees of, and safety of operation and equipment of, a motor carrier." 49 U.S.C. §31502(b)(1). "Motor carrier" is defined as "a person providing motor vehicle transportation for compensation." 49 U.S.C. §13102(14).

The MCA exemption applies only to employees of a motor carrier whose work "directly affect[s] the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. §782.2(a). Courts have interpreted this class of employees to include drivers, drivers' helpers, loaders and mechanics. *Morris v. Macomb*, 332 U.S. 422, 434 (1947).

A motor vehicle is being operated in interstate commerce if (1) the motor vehicle travels from one state to another, or (2) the motor vehicle does not travel from one state to another but the goods or people being transported are in the

process of being transported to or from another state.  29 C.F.R. §782.7; *Morris, supra.*

Whether an employee falls under the MCA exemption depends on both "the class to which his employer belongs and on the class of work involved in the employee's job".  29 C.F.R. §782.2(a).  In determining whether the MCA exemption applies to a motor carrier's employees, the important question is not whether the Secretary of Transportation *has exercised* authority over a motor carrier's operations, but whether the Secretary of Transportation *has the power to exercise* his authority to establish maximum hours of service and qualifications for the motor carrier's drivers.  *Levinson, supra*, 330 U.S. at 678; *Packard v. Pittsburgh Transp. Co.*, 418 F.3d 246, 253 (3rd Cir. 2005); *Friedrich v. U.S. Computer Services,* 974 F.2d 409 (3rd Cir. 1992); *Walters v. Am. Coach Lines of Miami, Inc.*, 575 F.3d 1221, 1226 (11th Cir. 2009) (Secretary of Transportation's power to regulate under the Motor Carrier Act "merely needs to cover a particular group of employees" for the exemption to apply).

It is immaterial the *name* given to an employee's position.  Instead, it is the *character of the activities* involved in the performance of his job that controls.  29 C.F.R. §782(b)(2); *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 707 (1947); *Allen v. Coil Tubing Serv., LLC*, 755 F.3d 279, 283 (5th Cir. 2014);

-6-

*Freeman v. National Broadcasting Co.*, 846 F.Supp. 1109, 1114 (S.D.N.Y. 1993),

rev'd on other grounds, 80 F.3d 78 (2nd Cir. 1996) (Titles alone are of little of no

assistance in determining an employee's exempt or nonexempt status.")

If an employer can establish that any driver in a particular group could be

called upon at any time to drive an interstate route, the Secretary of

Transportation's power to regulate extends to govern the maximum hours and

qualifications of *all* drivers in that group. *Morris, supra*, 332 U.S. at 432-33;

*Reich v. Am. Driver Svc.*, 33 F.3d 1154, 1157 (9th Cir. 1994);

Even when employees of a motor carrier engage in interstate transportation

"during a minority of their time", the MCA exemption still applies due to the

jurisdiction that the Department of Transportation has over setting the employees'

qualifications and maximum hours of service. *Morris, supra* at 437-438. For

example, in *Morris*, approximately 4% of the employer's transportation of goods

for customers was directly in interstate commerce. The employer's 43 drivers

drove 19,786 trips in 1941. Each driver was a full-time driver during each

workweek. The 724 trips made in direct interstate commerce were not divided

equally among the drivers but were distributed indiscriminately among the drivers

throughout the year, making the interstate trips a "natural, integral and apparently

inseparable part of the common carrier service of the petitioner and of his drivers."

-7-

*Id*. At certain times in the year, there was a greater concentration of interstate trips while at other times, fewer trips were made by the drivers. One driver drove 97 interstate trips and at least two drivers never made an interstate trip.

The Court reasoned that the employer needed to comply with the Interstate Commerce Commission's[1] ("ICC") regulations with regard to maximum hours of service and driver qualifications for all drivers to be able to provide interstate trips to customers on an as-needed basis. *Id* at 434. The Court held that the ICC had:

> the power to establish qualifications and maximum hours of service, pursuant to §204 of the Motor Carrier Act, for the **entire classification** of petitioner's drivers and 'mechanics' and that it is the existence of that power (rather than the precise terms of the requirements actually established by the Commission in the exercise of that power) that Congress has made the test as to whether or not §7 of the FLSA is applicable to these employees.

*Morris*, 332 U.S. at 434 (emphasis added.)

In *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869 (3rd Cir. 2015), the employer was a motor coach company that provided bus and shuttle services on established routes. Over time, the company operated 32 such routes, four of which crossed state lines. The company's employees were trained or capable of driving intrastate and interstate routes. Of the 13,956 "trips" the plaintiffs drove during

---

[1] The ICC is the former federal agency responsible for regulation under the Motor Carrier Act of 1935.

the relevant time period, 176 (or 1.3%) required them to cross state lines. 16 plaintiffs never crossed state lines, eight crossed state lines only once and five crossed state lines fewer than five times.

The issue in *Resch* was "whether the Plaintiffs - many of whom rarely or never crossed state lines" satisfied the MCA exemption "by being a member of a class of employees engaging 'in activities of a character directly affecting the safety of operation of motor vehicles in the transportation... of passengers or property' in interstate commerce. 29 C.F.R §782.2(a)." *Id.* at 873.

In answering this question, the Court noted that in *Morris,* supra, "the Supreme Court held that the DOT's predecessor, the ICC, had jurisdiction to regulate all of the employer's drivers - even those who never drove interstate - and that none of the drivers were entitled to overtime under the FLSA." In this regard, even though only 3.6% [in *Morris*] of the overall trips were interstate, "the case would be the same 'if each [of the employer's] driver[s] drove 4% of his driving time each day in interstate commerce' as there would be the same essential need for the [ICC's] establishment of reasonable requirements with respect to qualifications and maximum hours of service of employees". *Id.* at 874.

Applying *Morris* to the facts present in the case, the *Resch* Court noted that "the relevant inquiry here is whether Plaintiffs reasonably could have expected to

drive interstate, which we look at, among other things, "whether the carrier (employer) does any interstate work", "assigns drivers randomly to that driving", and maintains a "company policy and activity of interstate driving." *Id.* at 875.

The *Resch* Court held that the evidence conclusively established that the company was entitled to the MCA exemption from the FLSA's overtime rule. In doing so, the Court noted:

- 6.9% of all trips the drivers took were interstate.

- The company operated at least one interstate trip per month.

- The company maintained a policy to train drivers to drive intrastate and interstate routes and could discipline a driver who refused.

- The company adhered to federal regulations regarding drivers including the requirement that all drivers possess a valid CDL, comply with FMCSA drug testing requirements, submit to a regular DOT physical examination and provide a pre-employment safety performance history record.

- The company provided the employees with a handbook advising them of its expectation that they meet federal driver requirements.

- The recognition on the part of the drivers, together with evidence of the company's efforts to comply with DOT regulations - which in large part consisted

of safety measures imposed on, and communicated directly to, the drivers -

reinforced the drivers' reasonable expectation of driving in interstate commerce.

Given all of the above, the Court concluded that "Because [the company] is

an employer under the jurisdiction of the DOT and Plaintiffs are members of a

class of employees who could reasonably be expected to drive interstate routes as

part of their duties, the MCA exemption to the FLSA applies and Plaintiffs are

ineligible for FLSA overtime wages."[2] *Id.* at 876.

### C. Royal is a Motor Carrier Subject to DOT/FMCSA Jurisdiction.

The first prong of the MCA Exemption is whether Royal is a motor carrier.

Section 49 U.S.C. §13012 defines motor carrier as:

> (14) Motor carrier - The term "motor carrier means a person
> providing motor vehicle transportation for compensation.

It should be undisputed that Royal is a "motor carrier" as defined on Section 49

U.S.C. §13012(14). All passenger buses in Royal's fleet meet the standards of a

vehicle utilized in a "motor carrier's" operations. See *Exhibit 26,* Vehicle Fleet

Roster.

---

[2] The Court further ruled that the FLSA's *de minimus* exception to the application of the MCA exemption did not apply because "a number of courts have held that drivers should seldom, if ever, fall within [it]"; citing to *Friedrich,* supra at 416, 417; reasoning "this is because the driver's work more obviously and dramatically affects the safety of operation of the carrier during every moment that he is driving..."; citing to *Levinson,* supra at 768.

-11-

Second, the MCA exemption applies only to employees of a motor carrier whose work "directly affect[s] the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." 29 C.F.R. §782.2(a). Again, as drivers of Royal's passenger vehicles, it should be undisputed that Plaintiffs (both named and opt-in) are members of a class of employees whose work directly affects that safety of operation of motor vehicles.

Further, it is not a requirement that all employees of an employer travel interstate to meet the exemption but rather (1) that the employer is shown to have an involvement in interstate commerce; and (2) that an employee could, in the regular course of employment, reasonably have been expected to make an interstate journey. *Johnson Hix Wreck Service, Inc.*, 651 F.3d 658 (7th Cir. 2011). As discussed below, it is abundantly clear that Royal's drivers meet these standards.

### D. The Department of Transportation and the FMCSA Has Exercised Jurisdiction Over Royal's Passenger Service Operations.

The Motor Carrier Act vests in the DOT the power to establish reasonable requirements with respect to qualifications and maximum hours of service of employees and safety of operation and equipment of common and contract carriers

by motor vehicle. *Levinson*, supra at 658. The Act's requirements in this area are "intended to prevent accidents due to fatigue, without regard to consideration of adequacy of compensation. *Starrett v. Bruce*, 391 F.2d 320, 323 (10th Cir. 1968).

Although the MCA exemption applies to "any employee with respect to whom the Secretary of Transportation has the *power* to establish qualifications and maximum hours of service pursuant to the provisions of the Motor Carrier Act" [See 29 U.S.C. §213(b)(1)], in the case before the Court, the FMCSA has actually *exercised* authority over Royal's operations. As early as 1993, the Interstate Commerce Commission granted Royal the authority to operate as "a common carrier, by motor vehicle, in interstate or foreign commerce." See *Exhibit 21*, FMCSA Records, pp. 1-4. Royal has maintained this authority ever since.

Over the ensuing years, the FMCSA has conducted periodic compliance reviews of Royal's operations; the latest occurring in May, 2016 *after* the filing of this lawsuit. As a result of these compliance audits, the FMCSA has issued Royal various "safety ratings" over time that have either satisfied the agency's regulatory scheme or required Royal to take various remedial efforts in order to continue its operations. See *Exhibit 21*, FMCSA Records, pp.8, 14, 17-19, *Exhibit 24,* 2016 FMCSA Compliance Review. Indeed in May, 2016, the FMCSA was prepared to revoke Royal's operating authority entirely unless Royal could demonstrate certain

-13-

remedial efforts surrounding, *inter alia*, the FMCSA's Hours of Service regulations concerning the Drivers Daily Logs. See *Exhibit 24,* 2016 FMCSA Compliance Review.  Not only did Royal comply with the FMCSA's remedial requirements, it paid the fines imposed associated with these federal violations. See *Exhibit 1*, Donald Fitzsimmons Tr. pp. 108, 175-180.[3]

Royal applied to the FMCSA for its DOT number and it must file an updated motor carrier registration form every two years.  See *Exhibit 21*, pp. 10-12, 15-17.   The DOT numbers are prominently displayed on all of Royal's passenger vehicles. See *Exhibit 23,* Vehicle Photos.  As part of its obligations to the public, the FMCSA lists Royal as a passenger carrier on its web site and posts Royal's safety rating. See *Exhibit 22,* FMCSA Web Site.

Given that the FMCSA has expressly exerted jurisdiction and regulatory control over Royal's operations, concurrent jurisdiction with the Department of Labor and the FLSA is impossible. See *McMaster*, supra at 171. (recognizing that the MCA "establishes a strict separation between the Secretary of Transportation's jurisdiction and the ambit of the [FLSA's] overtime guarantee").

---

[3] The deposition transcripts for Donald and Debra Fitzsimmons will be designated as "Dn." and "Db." Fitzsimmons respectively. "S" Fitzsimmons will be used to designate Shannon Fitzsimmons' transcript.

### E. Royal's Drivers Must Meet DOT/FMCSA Licensing Requirements.

It is also undisputed that all of Royal's drivers are required, as a condition of hire and continued employment, to possess at least a CDL with a passenger endorsement. As such, all of Royal's drivers are required to submit to pre-hire and periodic DOT-regulated physical examinations and drug testing. See *Exhibit 1*, Dn. Fitzsimmons Tr. 65-69; *Exhibit 2*, Db. Fitzsimmons Tr. pg. 26; *Exhibit 5*, Employee Handbook, pg. 25, and 49 CFR subtitle B, chapter III, Subchapter B, Rule 383. See also *Exhibit 17*, Plaintiffs DOT Cards and related physical and drug screen results. Indeed, the DOT Cards are so critical, that Royal maintains a practice of reminding its drivers when their CDLs and DOT Cards must be renewed.[4] See *Exhibit 18,* Reminder Memos. All of the five captioned Plaintiffs herein had their CDLs when they applied for employment and maintained those licenses, with the required physical examinations and drug testing, throughout their employment. See *Resch*, supra at 874-875; *Garcia v. Pace Suburban Bus Svc.*, 955 F. Supp 75, 78 (N.D. Ill. 1996).

---

[4] The Michigan Department of State also sends out reminders to CDL drivers that FMCSA regulations require CDL drivers to "self-certify" when applying for or renewing CDLs. Plaintiff Pearson was required to do so and on January 10, 2014, identified herself as an "Interstate (Non-excepted interstate driver a fact that the Court in *Resch* found persuasive in evaluating a driver's reasonable expectation to engage in interstate travel. See *Exhibit 17.*

**F. Royal Drivers Maintain DOT Required Drivers Daily Logs and Conduct Both Pre- and Post-Trip Inspections Required by the FMCSA.**

It is also undisputed that Royal's drivers are required to record their driving, non-driving and pre- and post-check time on a DOT-approved form known as the "Drivers Daily Logs". The Drivers Daily Logs must be completed regardless of the vehicles to which drivers are assigned. See *Exhibit 1*, Dn. Fitzsimmons Tr. pp.107-108, 110; *Exhibit 2*, Db. Fitzsimmons Tr. pp. 54-55; *Exhibit 12*, B. Irvine Tr. pp. 14-17, 40-41; *Exhibit 13*, D. Clark Tr. pp. 23-27; *Exhibit 14*, R. Morrissette Tr. pp. 40-44; *Exhibit 15*, M. Pearson Tr. pp. 31-40 and *Exhibit 16*, E. Williams Tr. pp. 37-38. See also *Exhibit 19*, Drivers Daily Logs Examples and *Exhibit 5*, Employee Handbook, pg. 16. See also FMCSA regulation 49 CFR, subtitle B, Chapter III, Subchapter B, Rule 395.5.

Accordingly, Royal's drivers are restricted by FMCSA regulation 395.3 to drive no more than 10 hours following eight (8) consecutive hours off duty; or for any period after having been on duty 15 hours following eight (8) consecutive hours off duty. Further, Royal may not permit a driver to drive after having been on duty 70 hours in any eight (8) consecutive day period. See *Exhibit 20*, FMCSA regulation 49 CFR, subtitle B, Chapter III, Subchapter B, Rule 395.5.

-16-

All Royal drivers are required to conduct both pre- and post-trip vehicle inspections each time they report for their daily assignments consistent with FMCSA regulations and Royal employment policy.  The pre- and post-trip vehicle inspections are required to insure that the vehicle is safe to drive from a driver, passenger and general public standpoint.  See *Exhibit 12*, B. Irvine Tr. pp. 17, 45-46; *Exhibit 13*, D. Clark Tr. pp. 20-22; *Exhibit 14*, R. Morrissette Tr. pp. 38-40; *Exhibit 15*, M. Pearson Tr. pp. 41-43 and *Exhibit 16*, E. Williams Tr. pp. 34-36.  See also *Exhibit 5*, Employee Handbook, pp. 15-16.  See also Federal Motor Carrier Safety Administration regulation 49 CFR, subtitle B, Chapter III, Subchapter B, Rule 395.11, 13.

In this case, all of the captioned Plaintiffs in this litigation obtained motor vehicle training before they applied for employment at Royal.  All of them possessed the requisite CDL with a passenger endorsement.  As part of their previous education, Plaintiffs were well aware of the FMCSA regulations concerning hours of service, licensing requirements and pre- and post-trip safety inspections.  However, avoiding any risk whatsoever, before new hires are placed behind the wheel of a Royal passenger bus, they are provided a week-long training regimen that includes a review of the FMCSA-regulated time-keeping and safety inspection requirements of their employment.  The fact that Royal adheres to

-17-

FMCSA licensing, hours of service and safety inspection regulations (and has, in fact, been cited by the FMCSA for failing to adhere to these standards) clearly demonstrates that the MCA exemption applies to all of Royal's drivers.  See *Garcia v. Pace Suburban Bus Svc.*, supra at 78.

### G.  Royal Maintains an Out-of-State Charter Passenger and Airport Transportation Service Thus Making It Engaged in Interstate Travel.

Beginning in the first quarter of 1992, Royal began providing charter passenger services with out-of-state trips into the Toledo, Ohio area during the 1992 election year campaign.  See *Exhibit 1*, Dn. Fitzsimmons deposition Tr. pp. 20-21.  Over time, Royal's charter passenger services expanded in collaboration with the travel service industry to include trips to Cedar Point (Sandusky, Ohio), the Rock & Roll Hall of Fame (Cleveland, Ohio) and trips to the Amish area in Indiana.  See *Exhibit 1*, Dn. Fitzsimmons Tr. pp. 22-23.

At all times material to this litigation, Royal has continued to provide charter passenger service to locations located outside the State of Michigan including, *inter alia*,  trips to Cedar Point, the Rock & Roll Hall of Fame, the Bible Museum (Mansfield, Ohio), Quicken Loans Arena (Cleveland, Ohio), Caesars (Windsor, Ontario), and the Kalahari Resorts (Sandusky, Ohio). See *Exhibits 7-11* (2012-2016 Charter Orders).  See also *Exhibit 27*, Deanna Schwarz

Affidavit, *Exhibit 28*, Out-of-State and Airport Spreadsheets and *Exhibit 29,*
Month-by-Month Assignment Analysis.

On a more limited basis, Royal has also provided charter passenger trips to
destinations like the Museum Hotel (Cincinnati, Ohio), the Lively Stones Church
(Chicago, Illinois), the Summa Akron City Hospital (Akron, Ohio), the Hollywood
Casino (Toledo, Ohio), travel to Windsor, Ontario via a "Tour of the Bridge" trip,
the Windsor Yacht Club (Windsor, Ontario), the University of Toledo and the
Toledo Museum of Art (Toledo, Ohio) and Niagara Falls (Niagara, Ontario).  See
*Exhibits 7-11* (2012-2016 Charter Orders).  See also *Exhibit 27*, Deanna Schwarz
Affidavit, *Exhibit 28*, Out-of-State and Airport Spreadsheets and *Exhibit 29,*
Month-by-Month Assignment Analysis.

There is no doubt that, from 1992 forward, Royal has marketed itself as a
full service, tri-state operator serving Michigan, Ohio and northern Indiana and is
thus engaged in interstate travel.  See *Exhibit 1*, Dn. Fitzsimmons Tr. pp. 21-23,
25, 32, 36, 38-42, 50-51.  See *Garcia*, supra at 77 ("The [DOT] Secretary has the
power to set maximum hours for drivers if the company engages in more than a *de
minimus* interstate commerce and that includes a company that holds itself out as
an interstate company and solicits that business even though its prospect of
obtaining much of that business is poor and though some of its drivers never drive

-19-

interstate"). See also *Marshall v. Aksland*, 631 F.2d 600 (9th Cir. 1980); *Brennan v. Schwerman Trucking Company of Virginia*, 540 F.2d 1200 (4th Cir. 1976).

Royal's continued charter passenger service to out-of-state destinations like Cedar Point, Quicken Loans Arena, the Bible Museum, Kalahari Resorts, the Rock and Roll Hall of Fame and even more distant destinations like Niagara Falls and Chicago demonstrate its interstate travel presence in the industry.

While Plaintiffs may argue that these out-of-state trips are *de minimus* in relation to Royal's overall passenger operations, Courts have indicated that the amount of interstate travel trips is immaterial to whether the DOT and the FMCSA may exert regulatory jurisdiction over the vehicles and their drivers. Indeed, the *de minimus* standard has been held inapplicable once it is determined that the DOT and FMCSA have jurisdiction over an transportation company's operations. See *Resch,* supra at 875-876.

In addition to the out-of-state destinations serviced by Royal, Royal also provides regular charter passenger service to and from local airports in the Detroit area including the Detroit Metropolitan (International) Airport, Willow Run Airport and City Airport. Passengers either arrive on in-bound flights and are transported to local hotels, convention centers or businesses or are transported from these venues back to the airports for out-bound flights. See *Exhibits 7-11*

-20-

(2012-2016 Charter Orders).  See also *Exhibit 1*, Dn. Fitzsimmons Tr. pp. 92-93, 103-105; *Exhibit 3*, S. Fitzsimmons Tr. pp. 32, 35.  See also *Exhibit 27*, Deanna Schwarz Affidavit, *Exhibit 28*, Out-of-State and Airport Spreadsheets and *Exhibit 29,* Month-by-Month Assignment Analysis.

As such, Royal engages in providing a "continuous stream of interstate travel" to those passengers who either arrive at a local airport like Metropolitan from out-of-state or are transported to the airport for travel out-of-state.  See *Abel v. Southern Shuttle Services, Inc.*, 631 F.3d 1210 (11th Cir. 2011); *Benson v. Universal Ambulance Svc.*, 675 F.2d 783 (6th Cir. 1982) and *Garcia v. Pace Suburban Bus Svc.*, 955 F. Supp 75 (N.D. Ill. 1996).

Again, given its passenger service to and from the Detroit metropolitan area airports, Royal engages in the required interstate travel for the appliction of the MCA exemption.

### H.  Royal's Drivers Have a Reasonable Expectation of Engaging in Interstate or Airport Assignments.

In the application of the MCA exemption, it is not a requirement that *all* employees of an employer travel interstate to meet the exemption.  It is enough that the employer is shown to have an involvement in interstate commerce and that an employee could, in the regular course of employment, reasonably have been

-21-

expected to make an interstate journey. *Johnson Hix Wreck Service, Inc.*, 651 F.3d 658 (7th Cir. 2011). This is true even though an employee never drives across state lines.

In this case, the unrefuted evidence reflects Royal's adherence to FMCSA regulations including that all drivers must maintain a valid CDL with a passenger endorsement, comply with FMCSA drug testing requirements, submit to regular DOT physical examinations and record their time daily applying the FMCSA Hours of Service restrictions and utilizing DOT-required Driver Daily Logs. Each driver receives a copy of Royal's Employee Handbook that provides: "Today, with a fleet of thirty-eight (38) vehicles, Royal Transportation Company serves the entire metropolitan Detroit area, ***including limited short term or seasonal trips to Ohio, Illinois, Indiana, New York and Canada.***" See ***Exhibit 5***, Employee Handbook, pg 5 (Emphasis added.)

All of the Plaintiff were employed as "regular full-time drivers". As defined in the Employee Handbook, "regular, full-time drivers" "are those who are available, and communicate with Royal's scheduling supervisor on a daily basis. Available to work any of seven (7) days, AM or PM assignments, multi-day assignments, ***out-of-town or overnight assignments***." See ***Exhibit 5***, Employee Handbook, pg. 21 (Emphasis added).

-22-

During the applicant interviews, Mr. Fitzsimmons advises potential driver employees that Royal provides charter and shuttle services locally, regionally and throughout the tri-state area.  See *Exhibit 1*, Dn. Fitzsimmons Tr. pp. 50-51, 61-63, 98-100; *Exhibit 2*, Db. Fitzsimmons Tr. pg. 69.  Once employees are employed by Royal, over time they are provided training and gain experience for driving any of the assignments required by Royal's customers including the out-of-state and airport trips.  The more experience a driver acquires, the more likely he or she will be assigned to the more complicated assignments including out-of-state trips.[5] See *Exhibit 1*, Dn. Fitzsimmons Tr. pp. 51-52, 65-67, 89-92, 96-102; *Exhibit 2*, Db. Fitzsimmons Tr. pp. 39-40, 45-48; *Exhibit 3*, S. Fitzsimmons Tr. pp. The out-of-state trips are posted along with local assignments on the drivers daily assignment sheets for all drivers to view when they view the sheet.   See *Exhibit 25,* Daily Assignment Sheets.

Royal does not maintain a separate fleet of charter passenger service buses and shuttle passenger service buses or a bifurcated business model of "charter" and "shuttle" services.  Its passenger vehicles are used as needed and even the

---

[5] Indeed, on October 24, 2015, Plaintiff Pearson was assigned to a Cedar Point trip for which she was licensed, capable and willing to undertake despite the fact that she had been assigned to the so-called "shuttle routes" up until that time. *Exhibit 15,* M. Pearson Tr. pp. 74-78.

smaller vehicles travel out-of-state.  See *Exhibit 1*, Dn. Fitzsimmons Tr. pp. 36, 40-41; *Exhibit 2*, Db. Fitzsimmons Tr. pp. 63-64; *Exhibit 3*, S. Fitzsimmons, Tr. pp. 14-15.  Further, Royal does not maintain a formally recognized classification of "shuttle driver".  See *Exhibit 5*, Employee Handbook.  Drivers are not "guaranteed" a permanent route but may be assigned to routes as needed.  See *Exhibit 1.* Dn. Fitzsimmons Tr. pp. 132-133; *Exhibit 2*, Db. Fitzsimmons Tr. pp. 70-71.

Given all of the above, all of Royal's drivers can reasonably be expected to be assigned to an out-of-state or airport trip thus satisfying another prong of the MCA exemption.

## CONCLUSION

The record evidence establishes that Royal is subject to the exclusive jurisdiction and regulatory control of the DOT/FMCSA under the federal Motor Carrier Act.  As such, there can be no concurrent jurisdiction between the FMCSA and the Department of Labor.  Therefore, the FLSA's provisions on overtime do not apply to Royal's drivers.  Additionally, the record evidence establishes that Royal both markets itself as a passenger motor carrier engaged in interstate travel and, if cat, has a presence in the industry for interstate travel.  Finally, the record evidence establishes that Royal's drivers meet the standards imposed by the Motor

Carrier Exemption in that their work "directly affect[s] the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act" and that there exists a reasonable expectation that they could be called upon to travel in interstate commerce. Given the foregoing, Royal is entitled to the Motor Carrier Exemption to the FLSA's overtime requirements and summary judgment in its favor is appropriate.

Respectfully submitted,

THE DANIELSON GROUP. P.C.


By: /s/Kenneth M. Gonko
   Kenneth M. Gonko (P30660)
Attorneys for Defendants
55921 Gratiot Avenue
Chesterfield, MI 48051
(586) 749-6400
kgonko@dgrouppc.com

Dated: April 21, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on April 21, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to Maia E. Johnson, Gold Star Law, P.C., 2701 Troy Center Dr., Suite 400, Troy, MI 48084.

I declare that the above statements are true to the best of my information, knowledge and belief.

Respectfully submitted,

THE DANIELSON GROUP. P.C.


By: s/Kenneth M. Gonko
    Kenneth M. Gonko (P30660)
    Attorneys for Defendants
    55921 Gratiot Avenue
    Chesterfield, MI 48051
    (586) 749-6400
    kgonko@dgrouppc.com

Dated: April 21, 2017