UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Debra Clark, Brooksey Irvine,
Reginald Morrissette, Melba
Pearson, and Ezell Williams,
on behalf of themselves and all others
similarly situated,

      Plaintiffs,                                    Case No.  15-13243

v.                                                    Honorable Sean F. Cox

Royal Transportation Co., *et. al.*,

      Defendants.
_____/

## AMENDED OPINION & ORDER GRANTING
## SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS

This is an employment case. Plaintiffs Debra Clark, Brooksey Irvine, Reginald Morrissette, Melba Pearson, and Ezell Williams (collectively, "Plaintiffs") are all former employees of Defendants Royal Transportation Company, Donald Fitzsimmons, Debra Fitzsimmons, and Shannon Fitzsimmons (collectively, "Defendants"). Plaintiffs filed this collective action, on behalf of themselves and other similarly situated employees, under the Fair Labor Standards Act ("FLSA"). Plaintiffs claim that Defendants have violated the FLSA by failing to pay such employees overtime for actual overtime hours worked.

This matter is currently before the Court on Defendants' "Motion for Partial Summary Judgment." (Doc. # 26, Defs.' Mo.). Although titled a motion for "partial" summary judgment, the body of Defendants' motion asserts that Plaintiffs and members of the collective class are exempt from overtime coverage under the FLSA and, therefore, seeks summary judgment in

1

Defendants' favor. (*Id*. at Pg ID 376 & 400). This motion has been fully briefed by the parties. The Court heard oral argument as to this motion on August 3, 2017.

For the reasons stated below, the Court concludes that Plaintiffs had a reasonable expectation of travel in interstate commerce and are therefore exempt from overtime coverage. As such, Defendants are entitled to summary judgment in their favor.

## BACKGROUND

**A.    Factual Background**[1]

Defendant Royal Transportation Company ("Royal") is engaged in the business of providing charter passenger transportation services to businesses and individuals. (Defs.' Stmt. ¶ 1; Pl.'s Stmt. ¶ 1). Defendant Donald Fitzsimmons is the president and owner of Royal. (Defs.' Stmt. ¶ 2; Pl.'s Stmt. ¶ 2). Defendant Debra Fitzsimmons is the vice president of Royal and is responsible for payroll, accounting, receivables and booking/arranging charter orders. (Defs.' Stmt. ¶ 4; Pl.'s Stmt. ¶ 4). Defendant Shannon Fitzsimmons is the Operations Manager of Royal and is responsible for scheduling Royal's drivers and arranging charter services for various customers. (Defs.' Stmt. ¶ 6; Pl.'s Stmt. ¶ 6).

Royal markets itself as a full service, tri-state operator serving Michigan, Ohio, and northern Indiana. (Defs.' Stmt. ¶ 20; Pls.' Stmt. ¶ 20). Royal currently maintains a fleet of approximately 75 passenger bus vehicles including: three full-size motor coaches, that seat 55-57 passengers; eight mid-size bus vehicles, that seat between 35-44 passengers; and approximately 60 mini-buses, that seat between 20 and 25 passengers. (Defs.' Stmt. ¶ 14; Pls.' Stmt. ¶ 14).

---

[1] Pursuant to this Court's Practice Guidelines, Defendants have filed a Statement of Material Facts not in Dispute (Doc. # 31, Defs.' Stmt.) in support of their motion, and Plaintiffs have filed a Counter Statement of Disputed Facts (Doc. # 33, Pls.' Stmt.).

Royal provides both charter and shuttle passenger services.  Royal's charter routes provide service to locations outside of Michigan and to and from airports in the Detroit area. (Defs.' Stmt. ¶¶ 18, ; Pl.'s Stmt. ¶¶ 18, ).  The parties agree that Royal's charter services constitute travel in interstate commerce.

In addition to its charter service, Royal offers an "employee shuttle service" to various businesses located in the Detroit area, including Quicken Loans, General Motors, and Volkswagen.  (Defs.' Stmt. ¶ 22; Pl.'s Stmt. ¶ 22).  This service involves the transportation of a client's employees from nearby parking lots to the client's place of business.  (Defs.' Stmt. ¶ 23; Pls.' Stmt. ¶ 23).  The employee shuttle portion of Royal's business typically involves routes in the metropolitan Detroit area.  (Defs.' Stmt. ¶ 24; Pls.' Stmt. ¶ 24).

The large majority of Royal's services consist of intra-state shuttle trips.  In 2012, Royal made a total of 4,818 trips, 28 of which were out-of-state or airport assignments.  (Defs.' Ex. 29). In 2013, Royal assigned a total of 18,080 trips, 95 of which were out-of-state or airport assignments.  (*Id.*).  In 2014, Royal made 17,889 trip assignments, 53 of which were out-of-state or airport assignments.  (*Id.*).  And in 2015, Royal assigned a total of 21,005 total trips, 44 of which were out-of-state or airport assignments.  (*Id.*).

Because Royal is a "common carrier by motor vehicle" authorized to engage in interstate commerce, it is undisputed that it is subject to Federal Motor Carrier Safety Administration ("FMCSA") regulations.  Accordingly, Royal possess a Department of Transportation ("DOT") registration number and requires its drivers to possess a Commercial Drivers License ("CDL"), with  at least a Passenger ("P") endorsement. (Defs.' Stmt. ¶ 25; Pls.' Stmt. ¶ 25).

Royal drivers are also required to possess a valid United States Department of

3

Transportation Interstate Medical Card, which requires that they successfully complete a physical examination and drug test. (Defs.' Stmt. ¶ 29; Pl.'s Stmt. ¶ 29). These requirements are consistent with the Federal Motor Carrier Safety Administration regulations. (Defs.' Stmt. ¶¶ 27, 29; Pl.'s Stmt. ¶¶ 27, 29).

Over the years, the FMCSA has periodically conducted compliance reviews of Royal's operations, the latest occurring in May 2016. (Defs.' Stmt. ¶ 46; Pl.'s Stmt. ¶ 46). The May 2016 compliance review resulted in a proposed Safety Fitness Rating of "Unsatisfactory." (*Id*.). Donald Fitzsimmons subsequently petitioned the FMCSA requesting that the rating be changed based upon certain remedial efforts undertaken by Royal. (Defs.' Stmt. ¶ 47; Pl.'s Stmt. ¶ 47). As a result of Royal's petition for review, the FMCSA upgraded Royal's fitness rating to "conditional" based upon the proposed remedial efforts affecting all Royal drivers. (Defs.' Stmt. ¶ 48; Pl.'s Stmt. ¶ 48).

Royal employs approximately 94 drivers. (Defs.' Stmt. ¶ 15; Pl.'s Stmt. ¶ 15). Plaintiffs Debra Clark, Brooksey Irvine, Reginald Morrissette, Melba Pearson, and Ezell Williams were all formerly employed by Royal as "regular, full-time drivers" between the years of 2012 and 2015. (Defs.' Stmt. ¶¶ 7-11; Pl.'s Stmt. ¶¶ 7-11). The employee handbook defines regular, full-time drivers as those who are available to work a.m. or p.m. assignments, multi-day assignments, out-of-town assignments, or overnight assignments.

At some point during their employment, Plaintiffs worked more than 40 hours a week without receiving overtime pay. Plaintiffs allege that they are entitled to overtime pay because they are part of a class of drivers that were only assigned shuttle routes. Defendants deny that Royal maintains a formally recognized classification of "shuttle driver." (Defs.' Stmt. ¶ 63).

To support their allegations, Plaintiffs testified that only certain drivers–those hired to drive the larger motor coaches–were assigned interstate routes. (Clark Dep. at 35-36) (testifying that she was not hired to drive the "bigger busses"). Despite Plaintiff's testimony, however, it cannot be disputed that all Royal busses, regardless of size, have been utilized for interstate trips. (*See* Ex. 7-11 to Defs.' Br.). And, as Plaintiffs themselves acknowledge, Royal always retained discretion to change a driver's assigned route. (Defs.' Stmt. ¶ 53; Pls.' Stmt. ¶ 53). It is also undisputed that all Royal drivers were capable of driving interstate routes.

Prior to filing the instant suit,[2] the named plaintiffs were never assigned an out-of-state or airport route and had therefore never made such a trip for Royal. Of the opt-in plaintiffs, approximately 16 have driven interstate routes, 14 of which made 7 interstate trips or less throughout their employment.

Donald Fitzsimmons testified that, prior to hiring any prospective driver, he informs applicants that Royal provides charter and shuttle services locally, regionally and throughout the tri-state area. (Ex. 1 to Defs.' Mo., Fitzsimmons Dep. at pp. 50-51, 61-63, 98-100; 133). Fitzsimmons also testified that the applicants are informed that drivers could be expected to drive both shuttle routes and interstate routes throughout their employment. (*Id.*).

Plaintiffs deny being told that they could personally be assigned interstate routes. Plaintiff Clark testified that, during her interview, Fitzsimmons did not mention Royal's charter services or his expectation that Clark be available to drive interstate. Plaintiff Irvine similarly testified that he was never informed that he could personally be called upon to drive interstate. (Ex. 2 to Pl.'s Stmt., Irvine Dep. at 55). Fitzsimmons only described the various shuttle routes

---

[2] After the filing of this suit, Plaintiff Pearson was assigned to drive a 25-passenger bus to Cedar Point. (Defs.' Stmt. ¶ 55; Pls.' Stmt. ¶ 55). Another driver ultimately assumed responsibility for the trip. (Defs.' Stmt. ¶ 56).

5

Irvine would be expected to drive. (*Id*. at 24-26). Irvine further testified that even apart from the hiring process, no one at Royal ever indicated that he would be expected to drive outside of the metro-Detroit area. (*Id*. at 55).

Upon hire, all Royal drivers undergo a five or six day training program/orientation. During this time, drivers are acquainted with the vehicles and their anticipated routes. (Pl.'s Stmt. ¶ 31). Plaintiffs testified that they were shown various local shuttle routes. New hires are also acquainted with certain federal regulatory requirements, including pre-trip and post-trip vehicle inspections and the recording of "on duty" and "off duty" time on Drivers Daily Logs. (Defs.' Stmt. ¶ 31).

Plaintiffs brought this collective action under the FLSA to recover unpaid overtime. This Court granted Plaintiffs' request to conditionally certify a class of "all current and former individuals employed as Shuttle Drivers by Defendants after September 14, 2012, who did not drive out of state for Defendants, who worked hours for which they were not paid and hours in excess of forty per week but were not paid 1 ½ times their regular rate for overtime hours." (Doc. # 16).

Currently before the Court is Defendants' partial motion for summary judgment. (Doc. # 26, Defs.' Mo.). Defendants argue that they are not liable to Plaintiffs because Plaintiffs are not entitled to overtime pay. Plaintiffs have filed a response in opposition to Defendants' motion. (Doc. # 34, Pls.' Resp.). Defendants have filed a reply. (Doc. # 35, Defs.' Reply).

## ANALYSIS

Here, Defendants admit that Plaintiffs were not compensated for overtime hours worked. Defendants argue, however, that summary judgment is appropriate as to liability because Plaintiffs could have reasonably been called upon to drive in interstate commerce and are

therefore exempt from overtime compensation. The Court agrees.

## A. The Motor Carrier Exemption to The Fair Labor Standards Act

The FLSA generally requires that employees be compensated at a rate of 1½ times their normal hourly wage for every hour worked in excess of 40 hours per week. 29 U.S.C. § 207(a); *Baird v. Wagoner Transportation Co.*, 425 F.2d 407, 409 (6th Cir. 1970). However, there are exceptions to this general rule.

"FLSA exemptions are affirmative defenses on which the employer has the burden of proof, and those exemptions are to be narrowly construed against the employers seeking to assert them." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 502 (6th Cir. 2007). In this case, Defendants will only be entitled to summary judgment if they establish, through "clear and convincing evidence," that Plaintiffs meet "every requirement" of an exemption. *Ale v. Tennessee Valley Auth.*, 269 F.3d 680, 691 n.4 (6th Cir. 2001).

"[A]ny employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service" is exempt from the FLSA's overtime provision. 29 U.S.C. § 213(b)(1). Here, Defendants assert that Plaintiffs are subject to the "motor carrier exemption."

To determine whether Plaintiffs meet the requirements of the motor carrier exemption, the Court must look to the Department of Labor's regulations. Pursuant to the applicable regulations, "[t]wo considerations dictate whether the MCA exemption applies: the class of the employer and the class of work the employees perform." *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 869, 872 (5th Cir. 2015) (citing 29 C.F.R. § 782.2(a)). As such, the motor carrier exemption has two requirements. First, the employer must be a "carrier whose transportation of

passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act." 29 C.F.R. § 782.2(a)(1). Second, the employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce." 29 C.F.R. § 782.2(a)(2).

Here, the parties agree that Defendants have satisfied the exemption's first requirement – that Royal is a "motor carrier" and that Royal operates a passenger transportation service using "motor vehicles" that are "related to the movement of passengers." (Defs.' Stmt. ¶ 13; Pls.' Stmt. ¶ 13). However, the parties dispute whether Defendants have satisfied the second requirement. Specifically at issue is whether Plaintiffs engaged in activities sufficiently related to interstate commerce so as to bring them within the motor carrier exemption.

### 1. Plaintiffs Had A Reasonable Expectation of Travel In Interstate Commerce

Defendants attempt to establish a link to interstate commerce by arguing that: (1) Plaintiffs were capable of driving interstate routes; (2) that Defendants retained discretion to assign interstate routes to Plaintiffs; and (3) that the Secretary of Transportation has already exercised its jurisdiction over all of Royal's drivers.

After viewing the evidence in a light most favorable to Plaintiffs, the Court concludes that, throughout the course of their employment at Royal, Plaintiffs could have been called upon to drive interstate routes (*i.e.*, it is undisputed that Royal's drivers were subject to being assigned any route, including interstate routes). This is true despite the fact that the named Plaintiffs never drove in interstate commerce.

To determine whether Defendants have satisfied the exemption's second requirement, the

Court's focus should be on the "class of work" performed by employees occupying the same position, 29 C.F.R. § 782.2(a), and the likelihood of the employer distributing such duties among the employees in question. 29 C.F.R. § 782.2(b)(3).

"[T]he relevant inquiry here is whether Plaintiffs reasonably could have expected to drive interstate, which [courts] answer by look[ing] at, among other things, whether the carrier (employer) does any interstate work, assigns drivers randomly to that driving, and maintains a 'company policy and activity of interstate driving." *Resch v. Krapf's Coaches, Inc.*, 785 F.3d 896, 874 (3d Cir. 2015) (citations and quotation marks omitted).

Here, Plaintiffs attempt to manufacture a dispute as to whether they reasonably could have expected to drive in interstate commerce by pointing to the following: (1) testimony that only drivers capable of driving motor coaches were assigned interstate routes; (2) testimony that Plaintiffs were never specifically told that they could personally be called upon to drive interstate; and (3) testimony that Plaintiffs were not trained to drive interstate routes. This testimony is unavailing when viewed in light of the record as a whole.

First, there is no dispute that Royal engages in interstate commerce. There is also no dispute that Royal retains discretion to assign drivers *any* route and that all of its drivers were subject to being assigned interstate routes. And finally, there is no dispute that Royal maintains a policy and activity of interstate driving. Moreover, all of Royal's drivers were capable of driving interstate routes. Thus, the fact that Royal chose not to call upon Plaintiffs to drive interstate does not mean that Plaintiffs could not have expected to be called upon. *See e.g.,* Ex. 15 to Def.'s Mo., Pearson Dep. at 50 (testifying that she was never guaranteed a specific route); Ex. 15 to Def.'s Mo., Williams Dep. at 46 (testifying that if he was assigned a trip to the Toledo

Zoo, he would be required to fulfill that assignment).

Defendants cite *Resch v. Krapf's Coaches, Inc.*, which is helpful to the Court's analysis. In *Resch*, the Third Circuit held that the motor carrier exemption applied to the drivers of KCI, a motor coach company, that provided both bus and shuttle services. The issue in *Resch* was "whether Plaintiffs–many of whom rarely or never crossed state lines–satisfy the second requirement by being a member of a class of employees engaging 'in activities of a character directly affecting the safety of operation of motor vehicles in the transportation ... of passengers or property' in interstate commerce." *Resch*, 785 F.3d at 872 (quoting 29 C.F.R. § 782.2(a)).

The court reasoned that the plaintiffs in *Resch* had a reasonable expectation of driving in interstate commerce because the following facts were undisputed: (1) KCI had always operated at least one interstate route per month; (2) that KCI had a "company policy" of training its drivers on its interstate routes; (3) that KCI retained discretion to assign drivers to drive any routes on which they were trained, including interstate routes; and (4) that KCI drivers would be disciplined if they refused to make interstate trips. *Id.* at 874. The Third Circuit also noted that KCI's adherence to federal regulations regarding drivers further "reinforce[d] the drivers' reasonable expectation of driving in interstate commerce." *Id.* at 875.

Here, similar to the employer in *Resch*, Royal retained discretion to assign drivers any routes – including interstate routes. Also similar to *Resch*, Royal adheres to federal regulations by requiring drivers to possess valid CDLs, to comply with FMCSA drug testing requirements, and to submit DOT physical examinations. Royal also requires its drivers to conduct pre-trip and post-trip inspections on vehicles, and to fill out daily driving logs. Plaintiffs understood that they these requirements were mandated by federal regulations. Moreover, in the instant case, the

Department of Transportation exercised jurisdiction over Royal's operations as recently as May 2016. Taken together, these undisputed facts reinforced a reasonable expectation of traveling in interstate commerce. As such, Defendants have sufficiently established entitlement to the motor carrier exemption.

## CONCLUSION & ORDER

For the foregoing reasons, the Court concludes that Defendants have established that Royal is a motor carrier that regularly engages in interstate commerce, and that its drivers have a reasonable expectation of driving in interstate commerce. As such, Plaintiffs are exempt from the FLSA overtime-pay provisions and the Court **GRANTS** Summary Judgment in favor of Defendants.

**IT IS SO ORDERED.**

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 6, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 6, 2017, by electronic and/or ordinary mail.

s/Jennifer McCoy
Case Manager